## Louisville & Nashville Railroad Company v. Julia Nickell.

## Louisville & Nashville Railroad Company v. Hallick Nickell.

(Decided March 20, 1925.)

## Appeals from Perry Circuit Court.

1. Railroads—Evidence Plaintiffs were Seen in Time Held Sufficient for Jury.—In action against railroad for injuries while plaintiffs were crossing bridge where they could have been seen when train was 450 feet from them, and train could be stopped within 150 feet, evidence of plaintiffs that fireman was looking out of cab right toward them, though fireman denied seeing them, held sufficient to make jury question as to whether they were seen in time to have avoided accident.

2. Jury—Refusal to Sustain Challenge of Juryman who Previously had Litigation with Defendant Railroad Not Abuse of Discretion. —Where juryman on voir dire stated that he had previously had two lawsuits with defendant railroad for personal injuries which crippled him for life, but that he had no feeling of prejudice, and could try case fairly, refusal to sustain challenge held not abuse of discretion.

3. Damages—Evidence of Injury to Mind Properly Admitted.—In action for personal injuries, under allegation of injury to nerves and head which resulted in partial paralysis, proof of injury to mind, and roaring in head held properly admitted.

4. Appeal and Error—Evidence of Injury to Mind Held Not to Warrant Reversal.—In action against railroad for personal injuries, testimony of female plaintiff that she was not so good in her head and mind, and her mind was not like it was, held too inconsequential to warrant reversal, even though not admissible under pleadings.

5. Appeal and Error—Instruction Assuming that Both Engineer and Fireman Might have Discovered Plaintiffs' Peril Not Prejudicial. —In action against railway for personal injuries, instruction assuming that both engineer and fireman might have discovered

plaintiffs' peril, when there was no evidence that engineer could have done so, but evidence that fireman had, held not prejudicial.

MORGAN, EVERSOLE & BOWLING and WOODWARD & WARFIELD for appellant.

NAPIER & HELM, HOLIDAY & STAMPER and J. M. McDANIEL for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

While walking across the appellant's railroad bridge, near Lothair, in Perry county, Kentucky, on September 5, 1921, appellees, who are husband and wife, were struck by a train and knocked from the bridge. Their separate actions to recover damages for injuries thereby received were tried together, and resulted in a judgment for $4,000.00 for the wife and $1,000.00 for the husband. The right of recovery is based solely upon the alleged negligent failure to avoid the injury after discovery of appellees' peril, it being conceded that they were trespassers and no other duty was due them.

The first ground urged for reversal is, that there was no evidence that defendant's agents in charge of the train actually discovered plaintiffs' peril in time to have stopped the train before striking them, which was the only way in which the accident could have been avoided.

The train approached the bridge on a curve, which admittedly prevented the engineer from seeing plaintiffs, who were walking toward the train on the opposite side of the tracks from the cab in which he was sitting, so that the engine's boiler was between them, and the whole controversy turns upon whether or not the fireman, who was the only other person in the engine, actually saw them in time to have warned the engineer of their peril to permit him to stop the train before it struck them.

From his seat in the cab the fireman, if he had been looking, could have discovered plaintiffs' peril when the train was about 450 feet from them, and as the train had stopped at Lothair, only a short distance further from the bridge, it was running slowly and could have been stopped in about 150 feet, as is demonstrated by the fact that it was stopped in that distance, after the fireman admits he saw plaintiffs on the track just as the train struck them.

The fireman testified that he was not in his seat in the cab after the train left Lothair, or before it struck

plaintiffs, that he was firing the engine from the time they would have been visible from his seat in the cab until just before the train struck them, and that he did not see either of them on the track, but saw the wife as she was falling from the bridge, and as he was about to take his seat in the cab.

Both plaintiffs testify, however, that when they saw the train approaching, and about 450 feet from them, they looked up and saw a man in the cab, on the left-hand side, and that he was looking "right toward them."

An attempt is made by counsel for appellant to prove that the man plaintiffs saw and referred to in their evidence must have been in the cupola of the caboose rather than in the cab of the engine, but Mrs. Nickell stated positively that the man she saw and referred to was in the cab, on the left-hand side, and the only reasonable inference from her evidence, as well as that of her husband, is that they both referred to a man in the engine, which could have been none other than the fireman.

The further argument is advanced that the testimony of the plaintiffs that they saw a man in the engine looking toward them is no evidence that he actually saw them, but to this we are unable to agree. If the evidence of the plaintiffs be true, the only reasonable inference therefrom is that the fireman actually saw their peril in time to have caused the engineer to have stopped the train before it struck them.

Evidence that a party within seeing distance is looking directly at another is certainly some evidence that he sees him, and this court has often held such evidence sufficient to carry the question to the jury in cases where, as here, it was necessary for the plaintiff to prove actual discovery of his peril in time to have avoided the accident. L. & N. R. Co. v. Bell, 32 Ky. L. R. 1312, 108 S. W. 335; Becker v. L. & N. R. Co., 110 Ky. 474, 61 S. W. 997; Tenn. Central R. Co. v. Cook, 146 Ky. 372, 142 S. W. 683.

As against this position, counsel for appellant cite and rely upon a number of cases from this court where a peremptory for the defendant was ordered or approved upon the ground that the circumstances and conditions proven were as consistent with the theory that the engineer did not see the deceased as with the theory that he did see him, but these cases are clearly distinguished by their facts, since here the theory that the fireman did not see plaintiffs' peril in time to have avoided the ac-

cident is utterly inconsistent with their testimony that he was looking directly at them for a much longer time than would have been required to have stopped the train before it struck them.

We are, therefore, clearly of the opinion that the court did not err in refusing to direct a verdict for the defendant.

The next contention is that the court erred in refusing to excuse juryman Noah Couch, who was challenged by defendant because of his statement upon the *voir dire* that he previously had had two lawsuits with the defendant for personal injuries which rendered him a cripple for life. He testified, however, that he had no feeling or prejudice against the defendant because thereof, and that he could try the case fairly and impartially.

In such matters the trial court necessarily has a large discretion, and the mere fact that a juryman previously has had litigation with one of the parties to the action is not, of itself, sufficient to disqualify him as a juror, and, there being no evidence of actual bias or prejudice, we do not feel warranted in holding that the court abused a sound discretion in refusing to imply its existence upon the sole ground of previous litigation that, presumably at least, was satisfactorily adjusted.

The next insistence is that the court erred in permitting appellee, Julia Nickell, to state, in answer to a question by her counsel as to the condition of her mind since the accident, "Well, of course my mind ain't good now, since I have been hurt. I can't remember near good like I was in my head and mind—roaring in my head; my mind ain't like it was."

This was objected to upon the ground that there was no averment in the petition that appellee's mind was affected by the accident. The petition, however, alleges that, in addition to several other injuries, she was injured in her nerves and head, and was partially paralyzed. These allegations we think sufficient to authorize proof of injury to the mind, since injury to the head that results in partial paralysis must usually, if not always, have caused an injury to the brain. But even if this were not true, we are of the opinion that this evidence was entirely too inconsequential to warrant a reversal.

The final contention is that the court erred in the instructions given; but the chief criticism of the instructions is that they assume evidence of negligence after

discovery of appellees' peril, and is, therefore, but another argument that the case should not have been submitted to the jury at all—a question we have already disposed of.

The only other criticism of the instructions is, that they are erroneous in assuming that both the engineer and fireman, or either of them, may have discovered appellees' peril, when there was no evidence that the engineer saw or could have seen them.

The instructions are erroneous in this respect, but we are wholly unable to see how this error could in anywise have been prejudicial to appellant.

Wherefore, the judgment is affirmed.